## Morris v. Thomas Forman Company.

(Decided December 9, 1924.)

### Appeal from Owsley Circuit Court.

1. Adverse Possession—Cultivation of Land Under Color of Title Evidence of Adverse Possession.—The act of one claiming land under color of title in cultivating tillable portion of such land is evidence of adverse possession, especially where there is no adverse title or claimant thereto.

2. Adverse Possession—Title by Adverse Possession Not Lost Because Possession Not Continuous After Title Acquired.—Where plaintiff's predecessors had adverse possession of land for more than 15 years, and when not in actual possession cultivated tillable portion thereof, claiming whole under color of title, and plaintiff's possession, though not continuous, was not disputed for over 50 years, defendant's recently acquired patent title must yield to title acquired by adverse possession.

3. Trespass—Person Cutting Timber Under Patent Constituting Prima Facie Title Held Not Liable as Willful Trespasser.—Where land to which title had been acquired by adverse possession was unpatented, uninclosed, and without definite boundaries, and defendant acquired first patent thereto, which constituted prima facie title, his act in cutting and removing timber held not a willful trespass, warranting recovery of gross sale price at point of delivery.

C. W. HOGG, J. K. GABBARD and H. C. EVERSOLE for appellant.

H. C. FAULKNER, V. S. BEATTY and CHESTER GOURLEY for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Wm. Burns owned several contiguous tracts of land in Owsley county, upon one of which he lived and died. Title was derived through various patents, each of which was held in severalty, there being no outside boundary amalgamating all into one body. Lying near the center of these tracts was a long irregular shaped body of vacant land, embracing 70 acres, the sides of which were touched upon by the other tracts, but which had no marked boundaries. Apparently Burns thought this was covered by one of the patents under which he held title, and was claiming it along with his other lands, and the fact that it was unpatented was not discovered until long afterward.

He died about the year 1865. Some six or seven years before his death he placed his son-in-law, Jake Carnak on this land, and the latter erected and moved into a house on the patent line, part of which was within land owned by William Burns and part on the vacant land. He also cleared a filed of ten acres on the vacant land, enclosed it with a fence and cultivated it each year until after William Burns' death.

After William Burns' death there was a division of his estate in which there was allotted to his son, John, a tract of land containing 425 acres, by metes and bounds, and which was conveyed to him by the commissioners in that division, on the 8th day of January, 1865. The unpatented land was within this boundary, and thus for the first time was included in an actual boundary, and claimed under color of title by one of the Burns family.

Upon the land being allotted to John Burns, Carnak moved out of the house mentioned and John moved into it, and lived there for about one year. At that time he exchanged this boundary of land with his sister, Sarah Bishop, for another interest, and Sarah and her husband moved within the boundary, though in a different house.

After living within the boundary for a number of years, Sarah Bishop and her husband moved off the farm but continued to cultivate different parts of it every year, until August 2, 1887, when they, together with John, conveyed it to a brother-in-law, W. R. Sparks, who moved into the house in which Sarah and her husband had formerly lived.

Sparks lived there until the year 1889, when he sold it to the New Era Land Company, and continued to reside thereon as its tenant for two or three years afterward. In the year 1899 the New Era Land Company bought other lands in the vicinity to the extent of 4,000 acres in a block. The outside boundaries of this block were surveyed and marked, and on the 9th of July, 1909, the New Era Land Company conveyed same to the Forman Earl Company, a corporation, which in turn conveyed the same to the Thomas Forman Company, a corporation, in January, 1914.

Since 1889 the New Era Land Company and the various other owners have had tenants on different parts of their boundary for most of the time, but it does not appear that they have had continuous possession thereof for as much as fifteen years at one time.

In the year 1915, P. B. Burns, a grandson of the Williams Burns to whom reference is made above, and his (P. B. Burns') son-in-law, Levi Morris, procured a patent on thirty-one acres of this land. Afterward Burns conveyed his interest therein to Morris by deed duly executed and recorded.

In the years 1919 and 1920, Morris cut and removed the timber from this thirty-one acres of land, receiving about $4,000.00 for the logs at point of delivery.

The Forman company brought suit for injunction and to recover the value of the timber so cut. Morris filed an answer setting up his title. On final judgment the court confirmed the title of the Forman company, awarded it a judgment against Morris in the sum of $4,000.00, and perpetually enjoined him from committing further trespasses; this appeal results. As the thirty-one acres patented by Burns and claimed by appellant had not theretofore been patented, a decision of the case turns on the question of adverse possession in the appellee, and those through whom it claims.

Up to the year 1915, there was no adverse claim against appellees' title, but as this particular tract of land was not included in any other patent, and was not inclosed by well defined and clearly marked boundaries, there could have been no claim of adverse possession thereof, except as to the land enclosed by Jake Carnak, until the deed was made to John Burns in 1865, which for the first time included it in a boundary claimed under color of title.

The Carnak field lay near the center of the seventy acre tract, and as to it and some other similar fields that were cleared and cultivated thereon, it may be said that none of those were included in appellant's thirty-one acre patent, all of which lay at one end of that body and was unenclosed woodland. However, beginning with the possession of John Burns under color of title in 1865, continuous, hostile, adverse possession was held by John Burns, Sarah Bishop and W. R. Sparks until the sale to the New Era Land Company in 1889, and this possession was continued under it without a break for several years longer. It is true that during this period Bishop moved off and did not reside on the land for about five or six years, and that less than fifteen years elapsed from the time John Burns went into possession in 1865 to the time Bishop moved off. It is also true that less than

fifteen years elapsed from the time that Sparks moved into the residence in which the Bishop family lived until the time the house again 'became vacant under the New Era Land Company, but it must not be overlooked that the evidence is conclusive that during the time that the Bishops were not residing on the farm, while owning it, they were each year cultivating all the tillable land thereon and claiming the whole by virtue of their color of title, and there was no adverse title or claimant thereto. This is evidence of adverse possession. Nelson v. Johnson, 189 Ky. 815; Webb v. Hynes, 9 B. M. 388; Fohey v. Furman, 44 Amer. Dec. 129; Omaha, &c. R. Co. v. Parker, 29 A. S. R. 506; Royal v. Lisle, 60 Amer. Dec. 915; Davis v. Young, 32 Ky. 299; 1 R. C. L., page 693, section 6; and taken with the other facts and circumstances show such possession for the statutory period.

We conclude that the possession described had ripened into title before the conveyance to the New Era Land Company, and it is not claimed that it has since been lost. While not continuous since that date appellees' possession has been regular, and fifty years elapsed before it was disputed, and appellant's patent must yield to this. It follows that the appellee was entitled to recover.

A question, however, arises as to the measure of damages. The court was of the opinion that the appellant was a willful trespasser, and, as stated above, gave judgment for the gross sale price at point of delivery. The evidence of the value of the standing trees when cut being $2,000.00.

Admittedly this land was unpatented and appellant's patent was the first grant. It was unenclosed woodland and had no defined boundaries of any sort. Appellant by virtue of his patent had *prima facie* title, and we are not prepared to say that, under all the circumstances, his conduct in going upon the land and cutting and removing the timber, was such an act of bad faith as constituted him a willful trespasser.

We conclude that the court erred in so holding. On a return of the case the court will enter a judgment in favor of plaintiff for $2,000.00 instead of $4,000.00, and in all other respects the original judgment will stand.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.