## Hargis v. Hargis.

(Decided January 27, 1925.)

### Appeal from Breathitt Circuit Court.

1. Mortgages—Evidence Held to Prove Deed a Mortgage.—Evidence held to prove deed a mortgage.

2. Judgment—Prior Judgment Does Not Operate as Estoppel, where Parties were Not Adversaries in Prior Action.—Judgment, in action by grantor's creditor against grantor and grantee, refusing to cancel deed, or to declare it a mortgage, held not conclusive in grantor's subsequent action against grantee to have deed declared a mortgage, since prior judgment does not operate as estoppel, where parties were not adversaries.

3. Estoppel—Grantor held Entitled to Decree Declaring Deed Mortgage, though Joined with Grantee in Creditor's Unsuccessful Prior Action to have Deed Declared Mortgage.—Where widow in ill health had confidence in and relied on advice of brother, who was surviving partner of deceased husband, and executed deed to brother to secure indebtedness, and where she had no knowledge of matters involved in a creditor's action against her and brother to cancel deed or to have it declared a mortgage, and signed pleadings without knowledge of contents on brother's request, the fact that she was joined with brother in such action, in which her creditor was denied relief, did not deprive her of right to have deed declared a mortgage in her subsequent action against brother on theory that she had joined hands with brother to defeat a creditor, and that equity should leave her where it finds her.

4. Mortgages—Parol Evidence Admissible Without Allegation of Fraud or Mistake to Show Deed, Absolute on its Face, in Fact, a Mortgage.—Parol evidence is admissible without an allegation of fraud or mistake to show that a deed, absolute on its face, was executed to secure a debt and is therefore a mortgage.

GRANNIS BACH, KASH C. WILLIAMS and JOHN D. CARROLL for appellant.

A. H. HARGIS, SOUTH STRONG, M. H. HOLLIDAY, A. F. BYRD and E. B. ROSE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On October 27, 1914, Louellen Hargis executed a deed to A. H. Hargis by which she conveyed to him, absolutely, her home in Jackson, Kentucky, in consideration of $8,000.00 cash in hand paid. In February, 1922, she brought this suit against him alleging that the deed was only a mortgage and asking that it be so declared. The allegations of the petition were denied by answer. Proof was taken and on final hearing plaintiff's petition was dismissed. She appeals.

The plaintiff is the widow of Judge James Hargis, who was killed in 1908 by their only son, Beech Hargis. He was indicted for the murder of his father, convicted and sent to the penitentiary for life. Judge Hargis for a number of years was the partner of his brother, A. H.

Hargis, in business. The property in question is eight acres of land on which there is a nice home in Jackson, Kentucky. The land belonged originally to the father, John Hargis, and was divided between James Hargis and A. H. Hargis after his death. A. H. Hargis lived upon his part of the place and James Hargis upon his part. Mrs. Hargis had had no business experience up to the death of her husband. She was greatly prostrated by his death at the hands of their son and the son's conviction to life imprisonment. She was in a very bad nervous condition and entirely depended on those in whom she trusted for business direction. She spent money very freely in her efforts to save her son and had fallen in debt to the Lexington City National Bank. The bank sued her, obtained judgment and had her residence sold under the judgment. At the sale, she bid it in and her brother, Floyd Day, went on her bond. Day owed her a large sum of money but he could not pay her at that time. When the sale bonds fell due and had to be paid or something done, Day went to see A. H. Hargis and asked him if he would furnish the money to pay off these sale bonds and he said to Day, "I will want a deed something about like I had with you." He had previously taken a deed from Day to some of his property with the right to redeem it within a certain time, and Day had redeemed it. Mrs. Hargis had an offer at the time of $10,000.00 cash for the property from a banker at Jackson and on her brother's advice she declined this offer, Day telling her about what A. H. Hargis said he would do. Day was called away from town before the papers were drawn up and he had his attorney, W. L. Hammond, to see A. H. Hargis. Hammond went to see him; he agreed with Hammond to advance the money on condition that Mrs. Hargis make him a deed to the property. Hammond wanted him to advance the money and take a mortgage on it. Finally, it was agreed, as Day and Hammond state, that A. H. Hargis would take a deed to the property and pay off the sale bond and when Mrs. Hargis got on her feet financially and got her business straightened out, all he wanted back was the debt and interest and he stated that he would then reconvey the property to Mrs. Hargis. After this was agreed to Mrs. Hargis declined the offer of the banker to buy the property for $10,000.00. Before this Mrs. Hargis saw A. H. Hargis; she makes this statement as to the conversation between them: "W. E. Williams offered me $10,000.00 for the place and he (A. H. Hargis)

said he would pay it off and take care of it for me and that if Williams got it he wouldn't let me have it back; that he would take care of it for me." After the deed was drawn and the money paid Mrs. Hargis expressed to T. Green Strong how she and A. H. Hargis had gotten along. Strong makes the following statement:

> "I was down there at Mrs. Hargis' and she told me how she and Alec had been getting along in their business, and she said, 'I think more of Alec than I ever did.' She says, 'He has furnished me money to redeem my property here.' That is the best of my knowledge the way she told me and about what she said to me. Then a few days after that I met Alec right on the corner where Johnson's store is and I told him how Mrs. Hargis was feeling towards him and claiming she was a friend to him and was glad they had gotten along so well and Alec just remarked to the best of my knowledge, 'She ought to think a heap of me as I furnished her money to redeem her home with.' "

The testimony of these witnesses is only contradicted by the testimony of A. H. Hargis. They were disinterested and they were supported by the circumstances. Mrs. Hargis has continued to live in the home since the deed was made and used it just as she did before. The only thing A. H. Hargis has used is the pasture lot. Mrs. Hargis made this transaction upon the advice of her attorney, Hammond, and her brother, Floyd Day, and it is unreasonable that they would have declined a cash offer of $10,000.00 for the property and then deeded it for $8,000.00 to A. H. Hargis. Naturally at such a time she would look for help to her husband's brother, who had been his lifelong partner and near neighbor, a man of affluence and well able to help her.

If there was nothing more in the case we are persuaded this litigation would never be in this court, but there is this further fact: On December 31, 1914, the First National Bank of Jackson brought a suit against Louellen Hargis, A. H. Hargis and Beech Hargis to recover on a note for $10,000.00 which she had executed to the bank. In that petition it was alleged that the deed above referred to was a mortgage and only intended to secure A. H. Hargis in the sum of $8,000.00. The plaintiff prayed a judgment subjecting the property to its

claim. When that suit was brought A. H. Hargis had his attorney to draw his answer to that petition and also to draw Mrs. Hargis' answer. In those answers the allegations of the petition were denied. A. H. Hargis sent one of his clerks to Mrs. Hargis' house with the answer; she signed it and swore to it and it was filed. After the filing of these answers, no proof having been taken, it was adjudged that the plaintiff's petition, insofar as it sought to cancel the deed in question or to have the same to operate as a mortgage, be dismissed and that A. H. Hargis recover his cost of the plaintiff. This ended that branch of the case. Subsequent proceedings were had under which the plaintiff's debt was paid. The above judgment is relied on as a bar to Mrs. Hargis' action here.

She and A. H. Hargis were not adversaries in that litigation. The rule is that a prior judgment does not operate as an estoppel where the parties were not adversaries:

"The general rule is that parties to a judgment are not bound by it in subsequent controversies between each other, unless they were adversaries in the action wherein the judgment was entered. Hence a judgment against several defendants is usually not conclusive as between themselves in respect to their rights and liabilities toward each other, unless the defendants contest an issue with each other, either upon the pleadings between themselves and the plaintiffs or upon cross-pleadings between themselves. Where two or more defendants make issues with the plaintiff, a judgment determining those issues in favor of the defendants settles between them no fact that might have been, but was not, put in issue by a proper pleading." 15 R. C. L., p. 1013.

To the same effect see Akers v Fulkerson, 153 Ky. 228.

What weight should be given the pleadings and judgment in that case as evidence in this case must depend upon all the facts. Mrs. Hargis testifies in substance that she did not understand the paper and that she signed it simply because she was requested to do so by her brother-in-law. It is not clear that the paper was read to her or explained to her, and it is very doubtful if she would have understood an explanation if it had been made to her, for she was in very poor health, prac-

tically an invalid, and as shown by all the evidence, was thinking of nothing except her son Beech. After A. H. Hargis befriended her, as she understood, in furnishing her this money, she was only putty in his hands and she stood ready to do whatever he desired. The case would be very different between two individuals standing on equal footing, but some allowance must be made for weakness and for the power which the strong may exercise over the weak. While Mrs. Hargis did employ two attorneys to attend to her interest in that case, they were both employed as to other matters and neither of them ever consulted her or talked with her about this deed, although they talked with her about other matters involved in the suit. Her conduct, as shown, would indicate that she did not know that this matter was involved.

It is earnestly insisted that she joined hands with A. H. Hargis to defeat a creditor in that action and that having done this equity should leave her where it finds her. There would be much force in this position if she and A. H. Hargis stood on equal footing, but the rule is never applied where the parties do not so stand:

"That conclusion being reached, the inquiry is, does the record exhibit a state of facts that will give a court of equity the right to entertain appellant's complaint?

"The general rule is, in cases of executed contracts, where both parties are guilty of actual fraud, a court of equity will not lend its aid to either, but leave each to the consequences of his own wrongdoing. To apply this rule the parties must be *in pari delicto*, each equally guilty of the fraudulent intention and the fraudulent acting, with equal knowledge and equal willingness. When that is not the case, when there is imposition, duress, oppression, threats, undue influence, taking advantage of necessities or weakness, the party thus placed at disadvantage, although participating in the fraud, may be relieved in a court of equity as against his co-wrongdoer." Anderson's Admr. v. Meredith, 82 Ky. 571. To same effect see Harper v. Harper, 85 Ky. 165.

It is now well settled that, without an allegation of fraud or mistake, parol testimony is admissible to show that a deed, absolute on its face, was executed to secure a debt and is, therefore, a mortgage. Hobbs v. Rowland,

136 Ky. 197; Brown v. Spradlin, 136 Ky. 706; McKibben v. Dietz, 138 Ky. 697; Leibel v. Tandy, 146 Ky. 102; Smith v. Berry, 155 Ky. 688; Castillo v. McBeath, 162 Ky. 385; Carr v. Morrison, 178 Ky. 686; Henderson v. Adams, 182 Ky. 281.

On the whole case, in view of the relationship between the parties, their relative condition and all the circumstances, we think it clear that the deed should be held to be a mortgage.

Judgment reversed and cause remanded for a judgment as above indicated.