## Combs v. Algoma Block Coal Co. et al.

Feb. 13, 1940.
Rehearing Denied April 30, 1940.

Harvey Parker, Special Judge.

W. A. Stanfill and Bailey P. Wootton for John Combs.

J. W. Craft for appellees Algoma Block Coal Co. and Columbus Mining Co.

Roy Helm for appellees Jasper and Hattie Combs.

M. K. Eblen for appellees Ester Combs Bach and others.

C. W. Napier for other appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

This litigation grows out of conflicting claims of title to a tract of 13.63 acres of land in Perry county which is underlaid with valuable coal deposits. John L. Combs initiated the litigation when he filed his petition against the Algoma Block Coal Company and the Columbus Mining Company, corporations, alleging that he was the owner of the tract in controversy, which is set out and described in the petition, by adverse possession, and that the defendants within 5 years next before the filing of the petition had wrongfully, illegally and unlawfully entered upon such land and mined, carried away and sold at least 100,000 tons of coal worth at the time it was mined $1.50 per ton and had carried away and converted to their own use timber of a value of $1,000.

Certain heirs and vendors of heirs of Biram Combs filed intervening petition denying the John L. Combs' ownership of the tract of land in controversy and alleging in substance that they jointly owned it. For convenience we shall hereafter refer to these intervenors as the heirs of Biram Combs. Grant Combs, a brother of John L. Combs, also filed an intervening petition which he made a cross petition against the other claimants alleging that he was the owner of the land in controversy or at least a portion of it. It will be unnecessary to discuss pleadings of the coal company since it is admitted that they have mined coal from the land in controversy and have paid or are willing to pay royalties to whomsoever the court may adjudge entitled thereto.

This action was consolidated with another action between some of the parties and after much evidence including some pleadings and depositions in a former suit in which it is claimed that the land in controversy was involved, was heard, it was finally adjudged in substance that the petition of John L. Combs be dismissed and he take nothing thereby and that the intervening petition and cross petition of Grant Combs likewise be dismissed; that the heirs and vendees of heirs of Biram Combs who are parties to the actions were the owners of the land and entitled to the royalties for coal mined therefrom and this appeal is from that judgment.

As we understand from the record, the land claimed by the Biram Combs' heirs is located on Gregory branch and most of the land occupied and claimed by Grant and

John L. Combs is located on Dry Branch. There is a high mountainous ridge between these two branches. The Biram Combs' heirs claim that the line between their land and what is known as the Sam Combs tract which is claimed by John L. and Grant Combs runs with the top of this ridge. It is the claim of John L. and Grant Combs that their land extends over this ridge on the Gregory branch side so as to include the land in controversy which is on that side of the ridge. According to the record Sam Combs was issued a patent for 150 acres of land based on a survey dated June 4, 1844. There is a map in the record showing the location of this patent and the evidence conclusively shows and in fact it does not appear to be denied that it is correctly located. It shows that the Sam Combs survey and patent extend over onto the Gregory branch side of the ridge and this extension over the ridge is the 13.63 acres in controversy. The Biram Combs' heirs attempted to run their title back to conveyance from Jackson G. Combs to Biram Combs by deed dated January 24, 1853, but there is no showing as to how the vendor in that deed acquired title nor is there any claim that he or his immediate or remote vendors, if such there were, held under any patent. The deed and subsequent conveyances set up in the pleadings and referred to in proof apparently ran with the top of the ridge and therefore included the land in controversy. While the claims of respective parties to title is based largely on adverse possession the evidence shows that John L. Combs and Grant Combs had deed from their father Jeremiah, commonly referred to in the record as Jerry, which purports to cover all the land in the Sam Combs' survey and patent.

On October 3, 1905, Claiborn Combs and wife conveyed to Hiram Combs a deed to a portion of the Biram Combs' tract which purports to cover the land in controversy and the parties referred to herein as the Biram Combs' heirs are setting up and claiming under that deed by descent and by subsequent conveyances. The depositions in a former litigation which it is claimed involved land including the tract in controversy were introduced in evidence. These depositions show that Sam Combs and another to whom the Sam Combs' survey had been deeded but who was not making claim thereto executed a deed therefor to Jerry Combs but

that such deed has been lost; that he in turn conveyed different portions thereof, but which included the whole, to John L. and Grant Combs. We are unable to tell from the deeds and from the record where the dividing line between the respective portions is located.

Without entering into a detailed review of all the evidence bearing on the question it is sufficient to say that the evidence on behalf of John L. and Grant Combs shows that Sam Combs by himself or by tenants and those claiming under him has been in the adverse possession of the Sam Combs' survey since it was surveyed and patented, claiming and exercising ownership to the full extent thereof; that John L. Combs and Grant Combs have occupied and claimed this survey for more than 30 years and that their claim of ownership and actual possession extended to and covered the land in controversy; that John L. Combs had listed the land on the Gregory branch side of the ridge separately and had paid taxes thereon for a number of years. They claim to have cut and removed timber from the tract and to have cleared a portion of it. On the other hand the Biram Combs' heirs testified and show by other witnesses that they and those under whom they claim have been in adverse possession of the land in controversy for more than 30 years and they by themselves and tenants have cleared and cultivated portions of it. Their evidence shows that their ancestors claimed that the dividing line between their land and the Sam Combs land ran with the top of the ridge and pointed out to them where the line ran as now claimed by them; that at one time the owner of the Sam Combs tract built a fence between the lands which ran along the top of the ridge. However, the evidence for Grant and John L. Combs is to the effect that this fence ran down and included land in controversy.

It is stated in brief that the chancellor in an oral opinion apparently based his finding on the theory that there was an agreed or conditional line running with the top of the ridge as claimed by the Biram Combs heirs but it is our view that the evidence falls short of establishing such fact and at most merely shows that an ancestor of Biram Combs' heirs pointed out and located the line as indicated. In other words, the evidence merely tends to show that they claimed to that line. The record reveals this situation, the conveyances set up and

relied on by the Biram Combs' heirs lapped on the Sam Combs patent, apparently to the extent of the land in controversy. There have never been any buildings on the land in controversy but the heirs of Biram Combs and those under whom they claim resided on other portions of the land claimed by them. Therefore, there was never any actual entry by any of them upon the land in controversy. It is claimed by appellee that the Sam Combs patent is void because it is covered by a senior patent or entry of Thomas Cartright, for 10,000 acres and one surveyor who was introduced as a witness attempted to locate the Cartright entry so as to show that it would include the Sam Combs survey but the record as a whole and opinions of this court in other and previous litigation would leave this question in much doubt. However, we do not consider that question of great materiality since a junior patent carries with it color of title so as to give possession to one holding under it to the extent of his boundary. Middlesboro Waterworks v. Neal, 105 Ky. 586, 49 S. W. 428, 20 Ky. Law Rep. 1403; Bryant v. Strunk, 151 Ky. 97, 151 S. W. 381; Charleroi Timber & Cannel Coal Company v. Spaulding, Ky., 117 S. W. 291.

In Shutt v. Methodist Episcopal Church, 187 Ky. 350, 218 S. W. 1020, it was held that as a general proposition any instrument, however, defective and improper and no matter from what cause invalid, purporting to convey land and showing the extent of the claimant's claim, may be color of title. See Shively v. Elkhorn Coal Company, 217 Ky. 192, 289 S. W. 262; Gilbert v. Parrott, 168 Ky. 599, 182 S. W. 859; Tennis Coal Company v. Hensley, 198 Ky. 616, 250 S. W. 509. One entering land under a patent claiming to the extent of the survey becomes possessor of the whole so far as it is not adversely held by others. McLawrin v. Salmons, 50 Ky. 96, 11 B. Mon. 96, 52 Am. Dec. 563; Charles v. McCoy, 220 Ky. 439, 295 S. W. 407. The possession of part of the land embraced in a patent has been held by this court as constructive possession of the whole. Combs v. Stacy, 147 Ky. 222, 144 S. W. 24; Ramsey v. Thomas, 140 Ky. 356, 131 S. W. 11; Tennis Coal Company v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629; Kentucky Union Company v. Hevner, 210 Ky. 121, 275 S. W. 513. Where conveyances or grants of land interfere with each other, portions taken under the jun-

ior grant outside of the elder grant will not give possession of the interferences. Wilson v. Stivers, 34 Ky. 634, 4 Dana 634. It has also been held that where adjoining owners claim a strip of land on the outer boundary of their respective tracts the constructive possession of such strip attaches to the one having the elder rights. Wait v. Gover, 12 S. W. 1068, 11 Ky. Law Rep. 750. See also Whitley County Land Company v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2.

When the evidence is considered in the light of the foregoing cases it is manifest beyond doubt that the Biram Combs heirs have signally failed to establish title to the land in controversy by adverse possession or otherwise since neither they nor those under whom they claim have actually ever entered upon the interference of the deeds upon which they plead and rely with the Sam Combs survey and patent. On the other hand as will be seen under the evidence and the authorities cited, John L. Combs and Grant Combs and those under whom they claim have been in the actual or constructive possession of the Sam Combs patent and survey to the full extent thereof since the patent was issued.

It follows therefore that the court erred in adjudging that the Biram Combs heirs had title to the land in controversy or were entitled to rents or royalties on coal mined therefrom. We are unable to determine from the record the boundary line between the respective portions of the Sam Combs survey that John L. Combs and Grant Combs own. In the circumstances, they may upon return of the case have the question determined if they so desire upon the evidence heard or they may be permitted to take additional evidence in order that the question may be properly determined if deemed necessary.

Wherefore, the judgment is reversed with directions to set it aside and for proceedings and judgment in conformity with this opinion.