**D. B. FRAMPTON & CO. et al.**

v.

**SAULSBERRY.**

Court of Appeals of Kentucky.

March 19, 1954.

Rehearing Denied June 11, 1954.

Dysard & Dysard and A. W. Mann, Ashland, for appellants.

H. R. Wilhoit, Grayson, for appellee.

CAMMACK, Justice.

This suit was filed by A. W. Saulsberry, whom we will refer to as plaintiff, against D. B. Frampton & Company, hereafter called Frampton, to recover damages for the taking of timber from a 50-acre tract of land claimed by plaintiff. Frampton made its answer a cross-petition against the Saulsberry Land Company. It was stated in the cross-petition that Frampton had bought the merchantable timber on the land from the Saulsberry Land Company by general warranty deed and that if Frampton's title to the timber was defective then it was entitled to be indemnified against loss by its grantor, the Saulsberry Land Company. The case was tried by the judge without the intervention of a jury. He found that plaintiff was the owner of the 50-acre tract and awarded him $1,174.86 as damages against Frampton. The judgment also directed that Frampton recover a like amount on its cross claim against the Saulsberry Land Company.

All the parties have appealed. Frampton contends its grantor, the Saulsberry Land Company, is the owner of the property. The Land Company claims title by conveyance and by adverse possession. Plaintiff contends the lower court used the wrong measure of damages in computing the amount of his recovery.

The Land Company is the undisputed owner of a 900-acre tract of land which encircles the 50 acres in controversy. Plaintiff bases his claim to the 50-acre tract upon an unbroken chain of title connecting with the original land patent in 1839. However, we need not concern ourselves with conveyances prior to 1875. In that year Elizabeth Saulsberry, under whom all the parties claim, became the owner of the 50 acres.

In 1896 William Saulsberry, Elizabeth's husband, conveyed the 900-acre tract to Raymond H. and Harry Saulsberry, predecessors in title to the Saulsberry Land Company. The deed conveying the 900 acres included the 50-acre tract owned by Elizabeth Saulsberry. The Land Company claims under that deed. But Elizabeth Saulsberry did not sign the deed. Obviously, therefore, she conveyed nothing by this instrument. Moreover, Elizabeth Saulsberry some 20 years later, in 1915, conveyed the 50-acre tract to her son, William Saulsberry, Jr., plaintiff's predecessor in title. It is apparent, we think, that plaintiff established record title to the land.

Frampton and the Land Company also rely on adverse possession. The Land Company and its predecessors have claimed the whole 900 acres and have had constructive possession of the entire boundary. There is proof that John Saulsberry, under whom the Land Company claims, cut some timber off the 50 acres between 1911 and 1913, and there is also evidence that a small portion of this tract was farmed in 1916 and 1917.

These sporadic acts are not sufficient to establish title by adverse possession. It has been repeatedly held in this state that a possession, which, if continued for the statutory period of 15 years will ripen into title, must in the first instance be an actual possession. If the adverse possessor enters under a deed or other written instrument evidencing title, with the intention to possess the land to the extent of the boundaries described in his deed or writing, he ordinarily will be con-

sidered to be in actual possession to the extent of his boundary lines. But the rule does not apply where the boundary described in the instrument constituting his color of title overlaps a senior grant. In that event the possessor is not considered to have the actual possession of the land embraced in the conflict unless he actually enters upon that part. The adverse possession cannot be rested upon claim alone, but must be evidenced by such physical acts as will give the true owner constant notice of the claimant's possession. The mere occasional entry of the junior patentee upon the land within the conflict to cut timber is not sufficient possession to establish title. Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S.W. 130; Federal Gas, Oil & Coal Co. v. Harmon, 254 Ky. 255, 71 S.W.2d 630; Combs v. Algoma Block Coal Co., 283 Ky. 160, 138 S.W.2d 1033.

Appellants seek to avoid the application of these general principles by contending they do not apply where the land in the junior patent encircles that covered by the senior patent. But we see no valid basis for distinction. The principle of law remains the same in either event and is applicable so long as there is a conflict between the title muniments.

It was also alleged by appellants that any conveyance of the 50-acre plot after the 1896 conveyance of the 900-acre tract is champertous. But since we have held the 1896 deed did not convey the 50 acres, and since appellants have not acquired title by adverse possession, this, in effect, disposes of the plea of champerty. The possession of appellants and those under whom they claim was not sufficient to make the conveyances of Elizabeth Saulsberry and her successors champertous.

Finally, appellants rely upon a judgment entered in the Carter Circuit Court in 1907 which declared that plaintiff's predecessor, Elizabeth Saulsberry, had no interest in the 900 acres as against one George Saulsberry. It is claimed by appellants that the 1907 judgment is res judicata to this action. That judgment was entered in an action brought by George Saulsberry

to enforce a lien on the 900 acres as well as to determine the validity of a restrictive covenant in the deed which prohibited sale of the land before 1950. Raymond and Harry Saulsberry, the Land Company's predecessors in title, and Elizabeth Saulsberry were codefendants. The restrictive covenant was declared void and a small portion of the 900 acres was sold to satisfy the lien. Elizabeth Saulsberry's title to this land was not in issue.

 We do not regard the 1907 judgment as res judicata. Ordinarily, parties to a judgment are not bound by it in subsequent controversies between each other where they were not adversaries in the action in which the judgment was rendered. Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165; Hargis v. Hargis, 207 Ky. 366, 269 S.W. 297. In the 1907 action certain predecessors in title of all the parties to this suit were codefendants and there was no issue between them. Therefore, that judgment is not res judicata as between their successors on the point now in issue.

 We conclude that the trial judge was correct in finding plaintiff, A. W. Saulsberry, to be the owner of the 50 acres in controversy.

We look now to the proper measure of plaintiff's damages. It is argued with considerable vigor that the trespass by Frampton was willful and, therefore, the measure of damages is the market value of the lumber without deducting the expense of manufacture. The trial court fixed the damages as the value of the timber on the stump.

 The rule heretofore adopted by this court is that where timber is cut and removed by an innocent trespasser, the measure of damages is the reasonable market value of the timber on the stump. Allen v. Ferguson, Ky., 253 S.W.2d 8. If the trespass is willful, a different measure is applied. In that event the measure of damages is the gross sale price at the point of delivery. Morris v. Thomas Forman Co., 206 Ky. 191, 266 S.W. 873.

It has been said that the difference between a willful and an innocent trespasser is the one knows he is wrong, and the other believes he is right. Hughett v. Caldwell County, 313 Ky. 85, 230 S.W. 2d 92, 21 A.L.R.2d 373. Using this definition as a criterion, the chancellor properly found that Frampton was an innocent trespasser. There was substantial basis for its claim of title. On the other hand, it is not denied that Frampton had legal notice of plaintiff's claim. Its attorney received written notice of the claim before any of the timber was cut. After about 60% of the timber had been cut, Frampton again was notified that plaintiff claimed title to the 50-acre tract. Both notices were ignored. Thus, there was a deliberate cutting and removal of timber by one with knowledge of an adverse claim, later proved to be superior. Yet, if we follow the rule heretofore applied in this state, plaintiff is entitled only to the market value of the timber in the tree. This would result, in effect, to a retroactive sale of plaintiff's property at the market price at the time of taking, although he had given legal notice that he did not want to sell. In a number of cases involving the removal of mineral by one not the owner we have recognized the inequity of this rule and have searched for a more equitable solution. In Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.2d 1037, each of the claimants to the oil in controversy was an operating company in position to market the oil. Each had knowledge of the other's claim. The oil was removed under claim of title later shown to be defective. It was held that the measure of damages was the market value of the oil, less the expense of production. In Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, 21 A.L.R.2d 373, the same measure was applied to the taking of fluorspar under similar circumstances. The Hughett case was referred to with approval in Sandlin v. Webb, Ky., 240 S.W.2d 69, and in Bowman v. Hibbard, Ky., 257 S.W.2d 550. These cases are not directly applicable here since there is no showing that plaintiff was in position to, or had any desire or expectation himself to remove the timber. But those cases do bring into clear focus the problem of assessing damages in a case of this sort.

Other cases also have recognized that the terms "willful" and "innocent" are not adequate to describe all types of trespass, and that for the measurement of damages in some cases there should be a third category which would fall between a willful trespass on the one hand and an innocent trespass on the other. Union Oil Co. of California v. Reconstruction Oil Co., 20 Cal.App.2d 170, 66 P.2d 1215; Holliday v. Dunn & Baker, Inc., 125 Ore. 144, 265 P. 1096; Staub v. Sewanee Coal, Coke & Land Co., 140 Tenn. 505, 205 S.W. 320.

In a recent Louisiana case, Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211 almost on all fours with the case here, the question of damages for the wrongful removal of timber was discussed at length and an intermediate rule was applied. In that case, as here, the timber was removed after notice of an adverse claim which was later proved to be superior. The Louisiana court said the defendant had not acted in moral bad faith, since it believed it owned the timber; but it had acted in legal bad faith by deliberately cutting the timber after it had received notice of the adverse claim. The measure of damages applied was the value of the manufactured lumber, less the actual expenses incurred.

In Arkansas the measure of damages for the wrongful cutting and removal of timber is the value of the finished product, less the expense of manufacturing, unless the expense of manufacturing is in excess of the value of the finished lumber. In that event, the owner is entitled to the value of the finished product, less the increase in value between the timber in the tree and the finished product. Burbridge v. Bradley Lumber Co., 218 Ark. 897, 239 S.W.2d 285.

We are of the opinion that since plaintiff gave legal notice to Frampton of his claim to the timber before it was cut,

he should not be limited in damages to the market value of the timber in the tree at the time it was taken. He should not be required by operation of law to make a retroactive sale of his property to the trespasser at a price based on a fluctuating market. We conclude that the proper measure of damages against Frampton is the market value of the lumber manufactured from the timber, less the reasonable expense of manufacture.

■ Since the liability of the Land Company is predicated upon its warranty of title to the timber in the tree, the judgment in favor of Frampton against the Land Company should be based on the market value of the timber in the tree. The chancellor so held and this part of his judgment is correct.

The judgment is affirmed on the direct appeal of Frampton and the Saulsberry Land Company; on the cross-appeal of A. W. Saulsberry against Frampton, the judgment is reversed with directions for further proceedings consistent with this opinion.