**C.P. GUM and Harold Isaacs,
Appellants,**

**v.**

**Clarence COYLE, Appellee.**

Court of Appeals of Kentucky.

March 23, 1984.

P. Joseph Clarke, Clarke & Clarke, Danville, Arthur Daniel Kelly, Springfield, for appellants.

James F. Clay, Sr., Clay & Clay, Danville, for appellee.

Before DUNN, LESTER and McDONALD, JJ.

LESTER, Judge.

This is an appeal from a judgment entered upon a jury verdict awarding appellee compensatory and punitive damages for timber cut by appellants.

Appellant, C.P. Gum, owned a ninety-two-acre tract of land bordering a fifty-acre tract owned by appellee, Clarence Coyle.

Adjacent to both of these is yet a third parcel owned by one Archie Kimball who is neither a party to this action nor did he appear as a witness. In 1981, Gum was advised to harvest the large timber by a forest ranger in keeping with good conservation practices. Gum retained a surveyor, Charles Thomas, to find and mark his boundaries but he was unable to locate the Gum-Coyle boundary. Appellant then entered into a contract with Harold Isaacs, a logger, to cut the timber and transport it to a mill. When this operation was taking place, Coyle discovered that some of the trees were removed from his land, so he stopped the logging work. Gum then requested Thomas to return to the tract and locate the disputed boundary which he did, marking it by a series of flags.

Gum admitted that some of Coyle's timber was removed, but the parties were unable to reach a settlement, so appellee commenced this action in which the complaint consisted of two short paragraphs. In the first, ownership of the land was alleged while the second claimed that the defendants below went upon Coyle's land without his consent and "cut and removed trees, damaged and destroyed roadways, and otherwise trespassed upon his property to his damage in the sum of $10,000.00." By way of amended complaint, Coyle raised the provisions of KRS 364.130 and asked punitive damages in the sum of $25,000.

In his opening statement at trial, Gum admitted he owed Coyle something so the court directed a verdict as to liability. All of the evidence adduced as to the damages was introduced by appellee. It was he who engaged the services of the expert witness, John Pohlman, a forester, to count and number either the stumps or the cut trees remaining on the appellee's tract. It was Coyle who brought in the damage figure of $8,291.39 as being the median value of all timber cut and *delivered to the mill.* In addition, Pohlman valued the cut timber remaining on appellee's land, which was marketable by Coyle, at $1,777.62. The forester further testified that since the custom in the timber business is that half of the value of trees is the cutting and transporting to market, then the landowner actually only realizes 50% of the standing value.

Interestingly enough, Coyle used the surveyor as his witness and as such, his evidence should be considered as attributable upon the party introducing it. Even though Thomas only established the boundary line between the plaintiff and defendant, as opposed to that between Kimball and the parties, he, nevertheless, expressed the view that there had been some timber cut on the adjacent owner's land. In the event this cause should be retried, it would go a long way towards clarifying the entire litigation if the Kimball boundary was defined thus allowing for a more accurate accounting of just whose trees were removed.

■ Appellants urge upon appeal that Coyle failed to sustain the burden imposed upon him of establishing his tract line. The authority cited to us does place this duty upon the appellee, but as we view the record, it is apparent that he met his obligation through the surveyor. The fact that the plaintiff introduced an expert employed by the defendants to meet his burden does not detract from the fact that he did so. It must be recalled that Thomas did not determine the line on his first trip to the site in 1981, but he did on his second trip in 1982 after the timber was cut. What he did not establish was the Kimball boundary.

What causes us more concern is the measure of damages. Appellee, after introducing evidence only as to the value of the cut timber at the mill, argues to this court that the correct gauge is the "value on the stump and not when sold" citing *Allen v. Ferguson,* Ky., 253 S.W.2d 8 (1952). Kentucky adheres to the general statement appearing in 52 Am.Jur.2d *Logs and Timber* § 128 (1970) that:

The intention of the person cutting or injuring timber is, however, a controlling factor in determining the measure of damages.

This jurisdiction had adopted two measures of damages dependent upon the intention

of the one removing the trees as expressed in *D.B. Frampton & Co. v. Saulsberry*, Ky., 268 S.W.2d 25, 27 (1954):

> The rule heretofore adopted by this court is that where timber is cut and removed by an innocent trespasser, the measure of damages is the reasonable market value of the timber on the stump. *Allen v. Ferguson*, Ky., 253 S.W.2d 8. If the trespass is willful, a different measure is applied. In that event, the measure of damages is the gross sale price at the point of delivery. *Morris v. Thomas Forman Co.*, 206 Ky. 191, 266 S.W. 873.

Recalling that Coyle urges, by way of brief, that the *Allen* measure of damages is proper in this instance (that being the one applicable to an innocent trespasser), then we find it a bit incongrous that he seeks to invoke KRS 364.130 for punitive damages when that statute connotes anything but an innocent act.

■ At the conclusion of all the evidence, the court directed counsel for the appellee to dictate the instructions, the first of which was:

> You will find for the Plaintiff such sum as damages as you believe from the evidence, represents the fair and reasonable market value of the timber at the time it was cut, not to exceed Eight Thousand Two Hundred Ninety One ($8,291.39) Dollars and Thirty Nine Cents.

This was a proper instruction because there was absolutely no evidence that appellants did anything other than innocently. It must be remembered that when Coyle told Isaacs' logging crew that they were cutting his timber they stopped. Moreover, there is nothing in the record to indicate that Gum told Isaacs to remove any others but his trees. The problem arises when the jury arrived at what was termed "property damage $4,906.00" which was more than one half of the "at the mill" value ($4,145.69) as was the estimate testified to by the forester. We say this because the same expert further said that the value to the landowner was only 50% of the mill price with the balance going to the logger. We further note from the original com-

plaint that Coyle requested damages only for removed trees and destroyed roadways and nothing else. We are unable to find how the verdict conforms to the evidence.

Appellants complain that they were not allowed a credit for the expert's valuation of trees cut, but remaining in the possession of Coyle which timber was marketable. That sum was $1,777.62, but the difficulty is that appellants did not offer instructions of their own nor did they object to the omission of the mitigation in the instructions given.

We direct attention to a rather comprehensive discussion of the various measures of damages to timber found in Dobbs, *Remedies* § 5.2, 323 (1973).

■ We now turn to the matter of punitive damages. Appellee's foundation for this claim is couched in KRS 364.130(1) providing:

> Any person who *unlawfully* enters upon and cuts or saws down, or causes to be cut or sawed down, timber growing upon the land of another *and* without color of title in himself to the timber, or to the land upon which the timber was growing, shall be liable to the rightful owner of the timber in punitive damages. (emphasis added)

This statute is of recent vintage having become effective July 15, 1980, and this is the first reported appeal in which it has been involved. Appellants claim that punitive damages are allowable "only where the circumstances surrounding an act indicate malice, willfulness or a reckless or wanton disregard for the rights of others." As a general matter of jurisprudence that position is sound, but in the case at bar, the General Assembly had deemed that such a recovery is based upon a demonstration of unlawful entry without color of title to the timber cut. Therefore, it is our opinion that an instruction in an action brought within KRS 364.130 should require a jury to conclude whether a defendant entered upon another's land "unlawfully" and the court should further define that term because whether certain conduct is lawful or unlawful is a question of law and an in-

struction using those or similar terms without defining them in relation to the evidence is erroneous. 2 Palmore, *Kentucky Instructions to Juries* § 13.11 J, 18 (1977). In the instant case, the court failed in this respect.

■ It requires no citation of authority to point out that punitive damages are no favorite of the law and as such, a party should be allowed to attempt to demonstrate mitigation. This is permissible in this jurisdiction. *Ohio County Drug Co. v. Howard,* 201 Ky. 346, 256 S.W. 705 (1923). Thus, if not otherwise objectionable, any evidence offered to mitigate punitive damages should be allowed.

At the expense of sounding facetious, it might be said that neither the parties, the trial court, nor this court could see the forest for the trees, because we are unable to determine from the record if all the trees cut were appellee's, if the jury understood the difference between stump and mill value, if a stump value was even put into evidence, if the defendants were in fact prohibited from mitigating the punitive damages, and several other matters which appear to be in a state of confusion, and accordingly,

The judgment is reversed with directions to grant a new trial in conformity with the views expressed herein.

ALL CONCUR.