Nellie MEECE, et al., Appellants,

v.

FELDMAN LUMBER COMPANY,
Appellee.

No. 2007–SC–000785–DG.

Supreme Court of Kentucky.

May 21, 2009.

As Corrected June 22, 2009.

Rehearing Denied Aug. 27, 2009.

John T. Mandt, Somerset, KY, for appellants.

John T. Aubrey, Manchester, KY, for appellee.

Opinion of the Court by Justice
SCHRODER.

The issue in this case is whether property owners should be awarded treble damages under KRS 364.130 for trees cut by someone without "color of title." Color of title is not based on a subjective belief, but on objective evidence of title from which a subjective belief may by founded. We reverse the Court of Appeals on damages and remand to the trial court for further proceedings on damages.

Feldman Lumber Company (by David Feldman) purchased some acreage on the headwaters of Buck Creek in eastern Pulaski County on January 14, 2000. Tract II contained some 40 acres, next to about 18 acres of standing timber. The rest of the land purchased had been previously harvested of trees. The 18 acres with its stand of trees adjoined Nellie Meece and Juanita Whitis' property (hereinafter referred to as the Meece tract). Feldman, who had not walked the property boundaries before or after the purchase, paid Meece a visit to discuss ownership of the 18 acres of trees. Meece made it clear that she claimed ownership of the 18 acres. Subsequently, Feldman paid Meece anoth-

er visit and Meece again asserted ownership of the 18 acres. Feldman filed a suit to quiet title. While the suit was pending, however, Feldman went ahead and cut the timber on the disputed 18 acres in October of 2001.

Title was eventually quieted in Meece and the matter of damages was submitted on depositions. The trial court ruled that 96 trees were removed from the property with a total stump value of $3,185.46 plus $653.72 in court costs.

Feldman filed an appeal of the judgment quieting title in Meece. Meece filed a cross-appeal on damages, contending that the trial court erred in failing to award treble damages and attorney fees under KRS 364.130. The Court of Appeals affirmed the trial court on quieting title in Meece, and affirmed the trial court on denying treble damages because it agreed with the trial court that "Feldman had reason to believe the timber was his and thus possessed *color of title.*" The Court of Appeals concluded that Feldman was an innocent trespasser not subject to KRS 364.130. This Court granted discretionary review to discuss the issue of damages and KRS 364.130. The quieting of title in Meece is not before us.

At common law, cutting someone else's timber would be treated as a trespass.[1] Although there can be both criminal sanctions and civil liability for trespass for cutting someone else's timber, we are only concerned in this opinion with the civil remedies. At common law, the amount of damages in the civil action would depend on whether the trespass was innocent or willful. The rule was "where timber is cut and removed by an innocent trespasser, the measure of damages is the reasonable market value of the timber on the stump. If the trespass is willful, a different measure is applied. In that event the measure of damages is the gross sale price at the point of delivery."[2] This assumes of course, that there was a prior determination that the person was a trespasser, i.e. that the person cutting the trees was not the owner. Ownership is frequently litigated in an action to quiet title. When titled is quieted in someone other than the person cutting the trees, a trespass is a given and we move on to damages for the trespass.[3] Because the measure of damages depended upon whether the trespass was innocent or willful, the common law distinguished the two. "[T]he abstract distinction between a willful and an innocent trespasser [is] ... the one knows he is wrong and the other believes he is right."[4] "The burden is always upon the offender to establish his status as an innocent or mistaken invader of another's property."[5] "The test to be applied is that of intent, but, being a state of mind, it can seldom be proved by direct evidence."[6] "[T]he mere testimony of the person affected that he acted in good faith and honestly believed he was right in the position he assumed is not conclusive or, indeed, sufficient of itself to entitle him to the advantage of one occupying the place of innocence or good faith."[7] The *Hupp* Court decided the factors to be considered to show good faith or an honest belief would depend upon the circumstances as they existed at the time

1. *Hurst v. Commonwealth,* 276 Ky. 824, 125 S.W.2d 772 (1939).

2. *D.B. Frampton & Co. v. Saulsberry,* 268 S.W.2d 25, 27 (Ky.1954) (internal citations omitted).

3. *Swiss Oil Corp., et al. v. Hupp,* 253 Ky. 552, 69 S.W.2d 1037, 1039 (1934).

4. *Id.*

5. *Id.* at 1041.

6. *Id.*

7. *Id.*

of action, prospectively, not retrospectively. Factors tending to show good faith are reasonable doubt as to the other person's ownership, and advice of reputable counsel.[8]

Out of the search for objective evidence of intent, the courts began looking at "color of title," a concept borrowed from adverse possession cases. *Hurst*[9] was a criminal case, but was also looking for evidence of intent when a trespasser claimed the cutting of timber was innocent. The Court recognized color of title was a good indication that the trespass was innocent. To have "color of title" meant not "title in fact, but appearance of title."[10] In *Hurst*, there was a dispute over boundary lines and Hurst did have a deed. The Court asked whether Hurst had a reasonable basis for his claim based on "color of title" or "appearance of title," which should have been submitted to the jury.[11] It is important that the Court considered that the color of title could be a basis for a subjective belief. The Court did not hold, however, that the subjective belief amounted to color of title.

Higher damages for a willful trespass did not deter the willful trespassers. "Tree Pirates' are not a problem unique to Kentucky;...."[12] Many legislatures, including Kentucky's General Assembly, have tried to solve this identified problem through legislation.[13]

The General Assembly's first response was KRS 364.130, effective May 18, 1956. The early version of the statute provided:

(1) Any person who unlawfully enters upon and cuts or saws down, or causes to be cut or sawed down, timber growing upon the land of another and without color of title in himself to the timber, or to the land upon which the timber was growing, shall be liable to the rightful owner of the timber in punitive damages.

(2) This section shall not be construed as repealing any of the provisions of Section 433.260 of the Kentucky Revised Statutes and any penalties provided by this chapter shall be considered as additional thereto.

This early version of the statute made four changes to the common law rule on damages. First, it substituted a "trespasser" with "any person who unlawfully enters upon...."[14] Second, the common law distinction between an innocent or willful trespass became statutorily whether the person has or does not have "color of title" in himself. Third, and the most significant change, it added punitive damages[15] for a

---

8. *Id.* at 1041–1042.

9. 276 Ky. 824, 125 S.W.2d 772.

10. *Id.* at 774.

11. *Id.*

12. *King v. Grecco*, 111 S.W.3d 877, 881 (Ky. App.2002).

13. The courts "are not concerned with the economic and social philosophy of such laws or the wisdom of the legislation. We are concerned only with the question of whether it is within the power of the Legislature under the Kentucky constitution to enact [the] statute...." *General Elec. Co. v. Am. Buyers Coop.*, 316 S.W.2d 354, 358 (Ky.1958). Also, "the common law, prior statutes and the public policy growing out of them all must yield to the superior authority of a later enacted statute...." *Id.* See also, *Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky.1992).

14. That is the definition of a trespasser.

15. In the later tree cutting case of *Grecco*, 111 S.W.3d 877, the Court of Appeals held an owner could not recover both punitive damages and treble damages because of the election of remedies rule. We agree that the owner could not recover both damages but for a different reason. Punitive damages were not part of the common law but a statutory enactment effective in 1956 (and amended to treble damages in 1994) which changed

willful trespass (without color of title). Finally, section two made it clear that this civil remedy was in addition to the criminal penalties provided by KRS 433.260. The 1980 amendment only changed the reference to KRS 433.260 (which had been repealed) to the analogous KRS 514.030.[16]

Other than adding punitive damages, the only other real change in the common law rule on damages by the 1956 statute was the substitution of the language of the qualifier (innocent versus willful trespasser), to "without color of title." There is a slight difference. While a trespass may be innocent based only on a subjective belief, a trespass with "color of title" requires an objective "color of title" to form a subjective belief that the trespass is innocent.[17]

The statute (KRS 364.130) was amended again in 1994, which is the latest amendment. The statute now reads:

364.130 Liability of person entering upon and cutting timber growing upon land of another-Measure of damages

(1) Except as provided in subsection (2) of this section, any person who cuts or saws down, or causes to be cut or sawed down with intent to convert to his own use timber growing upon the land of another without legal right or without color of title in himself to the timber or to the land upon which the timber was growing shall pay to the rightful owner of the timber three (3) times the stumpage value of the timber and shall pay to the rightful owner of the property three (3) times the cost of any damages to the property as well as any legal costs incurred by the owner of the timber.

(2) (a) If a defendant can certify that prior to cutting:

1. A signed statement was obtained from the person whom the defendant believed to be the owner of all trees scheduled to be cut that:

a. All of the trees to be cut were on his property and that none were on the property of another; and

b. He has given his permission, in writing, for the trees on his property to be cut; and

2. Either:

a. A written agreement was made with owners of the land adjacent to the cut that the trees to be cut were not on their property; or

b. Owners of the land adjacent to the cut were notified in writing, delivered by certified mail, restricted delivery, and return receipt requested, of the pending cut and they raised no objection,

the court may render a judgment for no more than the reasonable value of the timber, actual damages caused to the property, and any legal costs incurred by the owner of the timber.

(b) With respect to subsection (2)(a)2.b. of this section, if no written objection was received from the persons notified within seven (7) days from the date of signed receipt of mail, it shall be presumed, for the purposes of setting penalties only, that the notified owner had no objection to the proposed cut.

(3) This section shall not be construed as repealing any of the provisions of KRS 514.030 of the Kentucky Revised

the common law. This is unlike the Arizona and Illinois statutes discussed by the Court of Appeals which provided these civil remedies are supplemental to existing remedies. *Id.* at 881–882. See *Gum v. Coyle*, 665 S.W.2d 929, 931 (Ky.App.1984), which dealt with the earlier version of the statute when punitive damages were authorized by statute.

**16.** The statute was not amended again until 1994.

**17.** *See generally Hupp*, 253 Ky. 552, 69 S.W.2d 1037, and *Hurst*, 276 Ky. 824, 125 S.W.2d 772.

Statutes and any penalties provided by this chapter shall be considered as additional thereto.

A comparison of the 1994 changes to the earlier version of KRS 364.130 reveals the only major change was to substitute "triple damages" for "punitive damages" in the case of a trespass without color of title. The statute also provided a method for mitigation[18] of damages in the event a person cutting the trees was found not to have title in fact, but merely color of title.

■ In the case sub judice, we know Feldman did not have title in fact, nor did Feldman take advantage of the mitigation provisions of KRS 364.130(2). Consequently, the measure of damages depends on whether Feldman had "color of title." If the trespasser did not have color of title, he owes treble or triple damages. If he, Feldman, who is now a trespasser in fact, had color of title, he is liable only for actual damages. Feldman produced a deed which Feldman asserts provides color of title. The deed to Feldman is from James R. Wilkins, et al. and conveys the property described as:[19]

TRACT II: Containing forty acres, more or less, and bounded as follows to-wit, on the waters of Buck Creek:

BEGINNING on a buckeye, elm and white oak, standing on the East bank of Buck Creek; thence N 84 degrees E 25 poles to a white oak; thence S 41 E 84 poles to a chestnut and dogwood; thence N 32 degrees E 125 poles to a white oak and hickory; thence S 80 degrees E 66 poles to two poplars; thence Silas Dyke's line to the creek, down the creek to the Beginning.

The trial court found that "[t]he chain-of-title to Tract II in Feldman's Deed can be traced in a continuous line to a Commissioner's Deed dated November 20, 1908 ... [from] Betsy Boyd's heirs[.]" Meece contends that for color of title, the chain of title must trace back to an adverse possesser, to the Commonwealth, or to a common grantor, that the Commissioner's Deed is insufficient. *McDaniel v. Ramsey's Administrators* recognized a tax deed (much like a commissioner's deed), together with possession, may constitute color of title, and to the extent of the boundary described therein (constructive possession).[20]

Meece also argues that color of title requires the deed describe the boundaries with a degree of certainty that readily allows the property to be located. We agree. In *Bryant v. Perry*,[21] the timber was cut by Robert Bryant who was claiming he contracted with the owner who had color of title. The heirs of Perry also claimed through color of title. The Perry chain of title went back to a squatter that claimed ownership by adverse possession. The land in dispute was unenclosed, had not been cleared, and no actual acts of adverse possession existed as to the portion of the property wherein the trees were cut. There was no well-marked boundary that went beyond the boundary of the land actually enclosed or cultivated. The Perry heirs claimed constructive possession of the disputed property because they alleged the deed included this property in its legal description, giving them color of title. This Court's predecessor, the Court of Appeals, held that "[t]o be effective as color of title, a deed must

---

18. KRS 364.130(2).

19. Deed recorded in Book 650 at Page 243 through 247. The deed descriptions for all the other tracts begin or end with language identifying the tract as lying in Pulaski County, Kentucky. No one is questioning that

"Tract II" is also allegedly located in Pulaski County.

20. 305 Ky. 536, 204 S.W.2d 953, 954 (1947).

21. 284 Ky. 698, 145 S.W.2d 1055 (1940).

describe the land with the degree of certainty essential to ascertain the boundaries."[22] In reviewing the description in Perry's deed, the Court concluded the description was "indefinite, and the lines are susceptible of more than one location."[23] In such a case, "[t]he burden was on the plaintiffs [the persons claiming ownership through color of title] to locate the boundaries and to show that the land in dispute was embraced within the lines claimed by them."[24] The Court looked at the description in the Perry deed and concluded "the lines are susceptible of more than one location."[25] When there is uncertainty as to whether the description embraces the land in question, the claim of color of title fails.

Likewise, in the case sub judice, both Meece and Feldman claim they have color of title by virtue of their deeds. Both have valid chains of title, Meece's going back to a patent and Feldman's going back to a commissioner's deed. However, only Meece has a description that readily allows the property to be located, albeit by a surveyor. That is why title was quieted in Meece.

Feldman's description cannot be located by a surveyor without a lot of guess work. Even assuming the property (Tract II) is located in Pulaski County, we only know that it is somewhere on the East side of Buck Creek and it touches the Silas Dyke line. The 18 acres in question are alleged to be part of Tract II. The 18 acre tract in dispute had not been cleared, was unenclosed, had no well-marked boundary, no natural monuments, no defined point of beginning, nor any signs of adverse possession. Ralph Peters, the Feldman's surveyor, could not locate the boundaries in Feldman's deed. He tried to draw the boundary lines and then place the property (like a puzzle) in a map of other properties in the area. It didn't fit, but Peters looked at other deeds and the other surveyors' corners from those other deeds and produced a survey. The problem was that the survey did not match the description in the Feldman deed. The uncertain description precludes color of title in Feldman.

In quieting title in Meece, the trial court relied on the survey by David Altizer. Altizer also reviewed other deeds and surveys as well as visiting the property where he found a freestone cliff. The Meece legal description references a freestone cliff (a natural monument) in the center of the line in dispute. With one correction in a deed call, Altizer's survey fit the Meece deed description and other surveyors can locate the property in the field. Thus Meece's legal description was certain and ascertainable, therefore Meece had color of title to the 18 acres.

■ In quieting title in Meece, Feldman, by operation of law, turns out to be a trespasser, or in the words of KRS 364.130, an entry "upon the land of another without legal right." Feldman's deed description does not allow the property to be located with certainty and thus does not amount to color of title. While the Court of Appeals decision opined that a subjective belief of ownership created "color of title," we hold otherwise for purposes of awarding damages under KRS 364.130. It is the holding of this Court that under the current version of KRS 364.130, color of title is an objective standard from which a subjective belief may be formed (to be deemed an innocent trespasser in a civil suit).

---

**22.** *Id.* at 1057 (internal citations omitted).

**23.** *Id.*

**24.** *Id.*

**25.** *Id.*

In this case Feldman entered upon the land of another without legal right and without color of title, and sawed down the trees. Feldman did not, or was not, able to obtain mitigating statements as authorized by KRS 364.130(2). Therefore, the case must be remanded to the trial court for an award of damages pursuant to KRS 364.130(1).

For the foregoing reasons, the opinion of the Court of Appeals on damages is reversed and the matter remanded for further proceedings consistent with this opinion.

NOBLE, SCOTT, and VENTERS, JJ., concur. MINTON, C.J., dissents by separate opinion in which CUNNINGHAM, J., joins. ABRAMSON, J., not sitting.

MINTON, Chief Justice, Dissenting.

While it superficially recognizes the existence of the concept of color of title, which appears in the nature of a defense in KRS 364.130 to temper the punitive aspect of treble damages, the majority effectively abolishes the color of title doctrine by making the standard to prove its existence impossibly high. According to the majority, any "uncertainty as to whether the description [in a deed] embraces the land in question" means that a "claim of color of title fails." Majority opinion, p. 10. Such a high standard is unwarranted and much more stringent than what has always been required. For that reason, I respectfully dissent.

Color of title only means "appearance of title...." *Hurst v. Commonwealth,* 276 Ky. 824, 125 S.W.2d 772, 774 (1939). So

that "any instrument, *however defective or imperfect,* and no matter from what cause invalid, purporting to convey the land and showing the extent of the tenant's claim, may be 'color of title'...." *Shutt v. Methodist Episcopal Church,* 187 Ky. 350, 218 S.W. 1020, 1021 (1920) (Emphasis added). And "questions as to the sufficiency of the description of land in an instrument claimed to constitute color of title are considered fact questions for the jury on conflicting or doubtful evidence." 2 C.J.S. *Adverse Possession* § 297 (2008).[26]

I believe the majority engages in appellate revision rather than appellate review by doing its own fact-finding. The trial court had direct contact with the evidence in this case, and we should defer to the trial court as the fact finder. Kentucky Rules of Civil Procedure (CR) 52.01 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.)"

The trial court found that Feldman "possessed an arguably sufficient deed." Instead of giving due deference to that finding, which is sufficiently supported by the record, the majority engages in its own fact-finding and simply concludes that since surveys did not mathematically and precisely align with the boundary description in the Feldman deed, then Feldman did not have color of title. But mathematical precision is not necessary to constitute color of title because even "an ambiguous description may be sufficient to afford color of title." 2 C.J.S. *Adverse Possession* § 92 (2008). Under Kentucky law, gener-

---

**26.** Much of the precedent regarding color of title revolves around the doctrine of adverse possession. Precedent from adverse possession cases should be applicable to this case as an aid for this Court to determine what constitutes color of title and whether Feldman met the requisites. *See, e.g., The Oneida Indi-* *an Nation of New York v. The County of Oneida, New York,* 217 F.Supp.2d 292, 302 n. 6 (N.D.N.Y.2002) (recognizing that color of title precedent involved adverse possession but utilizing it, nonetheless, in factually distinguishable case).

ally, if there is a "bona fide dispute" between persons who each claim to be the owners of a tract of land, the party who ultimately is found not to be the record title owner may, nonetheless, have color of title if that party "had reasonable grounds" for his or her ownership belief. *Hurst,* 125 S.W.2d at 774 ("it cannot be said that the line claimed by appellant did not furnish appearance or 'color' of title. It is clear that there was a bona fide dispute between the parties and appellant had reasonable grounds to believe that the line claimed by him was the correct one.").

In the case at hand, Feldman claimed ownership of the disputed land because he had a deed that purported to describe it. Although he ultimately was found to not be the record title owner of the disputed land, and although his deed perhaps contained inaccuracies in its description of the boundaries, the trial court concluded that Feldman's deed was sufficient to constitute color of title. And based upon its findings, the trial court declined to award treble damages against Feldman. The majority has pointed to nothing to show that the trial court's conclusion was clearly erroneous, preferring instead to overturn precedent by creating a heightened standard necessary to show color of title. I submit, however, that perfection and absolute certainty should not be required for someone to possess mere color of title.

Since the Feldman deed appeared on its face arguably to include the disputed land and since Feldman had engaged the services of a surveyor to stake the boundaries for him, I cannot take issue with the trial court's findings or conclusions. I question whether application of the majority's heightened color of title requirement would result in Meece—the judicially acknowledged record title owner of the land in question—lacking color of title since Meece's deed also contained at least one erroneous call.

For the foregoing reasons, I respectfully dissent and would affirm both the Court of Appeals and the trial court.

CUNNINGHAM, J., joins this dissenting opinion.