16041

BRADLEY v. CITY COUNCIL OF CITY OF GREENVILLE
*ET AL.*

(46 S. E. (2d) 291)

*Mr. W. W. Wilkins,* of Greenville, for Appellant,

*Messrs. Mann & Arnold* and *J. D. Todd, Jr.,* of Green-ville, and *Huger Sinkler,* of Charleston, for Respondents, cite:

February 6, 1948.

STUKES, Justice: Act No. 432 of May 19, 1947, 45 Stat. 1145, embodies an ingenious legislative plan to provide public hospital facilities for the people of Greenville County. The City of Greenville, which is the county seat, now owns and operates a hospital in the city which is ample for its residents but is unequal to the needs of all of the people of the county. The present estimated population of the latter is 173,900, of which the relatively small area of the city contains an estimated 46,000. The present City Hospital, site, permanent improvements, equipment and other assets, including a substantial amount of cash, is of an appraised value of $1,500,000.00. The enactment proposes that the county issue general obligation bonds in the same amount, with the proceeds of which the hospital will be expanded and enlarged whereby it will adequately provide for the inhabitants of the entire county, including the city; but the government of the city is naturally unwilling to part with the ownership and management of its hospital without guaranty of the continued operation in such manner as will insure the care of the hospital needs of its population.

The Act appears to be a crystallization of the ideas and plans of the governing bodies of both entities, the county and the city, and provides, as will be seen by reference thereto, for a Board (the composition, appointment and tenure of the members of which will be later discussed) which will take over the management and control of the hospital, the proceeds of the bond issue and expand and operate the institution in accord with the terms of the Act. The issuance of the authorized bonds has been approved by the electors of the county and the Board members have been commissioned, have qualified and are ready to proceed.

The City Council of Greenville and the Board of Commissioners of the County have caused to be prepared a proposed

contract which is in accord with the terms of the Act and the city authorities are ready to convey the hospital properties to the new Board upon the execution of the agreement. It contains the following provisions, derived from Sec. 3 of the Act:

"III. The County Board, acting for Greenville County, agrees for its part that if the Statute above recited shall afterwards be repealed or amended in any particular, without first obtaining the approval of the corporate authorities of the City of Greenville, evidenced by the majority action at a duly called meeting of the City Council thereof, or in the event Greenville County shall hereafter acquire the property and assets which the City shall have conveyed to the said Greenville General Hospital Board of Trustees, as the same may be constituted on the occasion of their acquisition by said Board of Trustees, or as the same may have been modified, transformed, converted or changed, and whether the acquisition become effective by operation of law, by voluntary act, or through eminent domain, then in either of such events Greenville County shall be obligated to pay to the City of Greenville the sum of One Million Five Hundred Thousand ($1,500,000.00) Dollars, which obligation shall constitute a lien upon all hospital facilities and equipment located within the corporate limits of said City, inferior only to any lien created in favor of revenue bonds issued prior to the occurrence of such event. This covenant or agreement shall be deemed to be for the benefit of the several residents and taxpayers of the City of Greenville and shall be enforceable at law or in equity at the instance of any one or more or either of them.

"For the purpose of this article the words 'repealed or amended in any particular' shall be deemed to include any Statute which would have the effect of altering or changing the method by which the said hospital is operated, managed or controlled, or is in any way inconsistent with the said Statute as the same is now constituted even though

the amendatory or repealing statute does not literally alter or repeal said statute."

The action attacks the constitutionality of the Act of 1947 on several specified grounds which make the points for decision here. Trial in the lower court resulted in the sustention of a demurrer to the complaint and this appeal by plaintiff followed. He is a resident of the city of Greenville and owns taxable property which lies in the city and also some in the county outside the city, so there is no question of his capacity to maintain the action in all its aspects. The legal questions presented are stated by him, and agreed to by respondents, as follows:

1. Is the Act and the contract to be made pursuant to its provisions invalid as an attempt to limit the inherent power of the people of South Carolina, through its General Assembly, to modify, or amend its laws?

2. Does the Act limit or abridge the power of eminent domain?

3. Is the contract ineffective and as a result thereof, is the obligation of the City to convey its hospital *ultra vires*?

4. Do the powers of the Hospital Board, particularly with respect to the succession of membership, exceed constitutional limitations?

5. Do the obligations to be undertaken by Greenville County exceed its constitutional debt limit?

Short shrift may properly be made of most of the questions. The first appears to result from misapprehension of the nature and effect of the Act. Giving it and the proposed contract full effect, it cannot be said that the General Assembly has attempted to forever tie its and its successors' hands with respect to the hospital. It may take any proper legislative action in the future but it has provided by the present enactment in behalf of the State and its subdivision, Greenville County, that if the enabling act be amended or repealed by subsequent legis-

lation without the consent of City Council or if the hospital be acquired by the county by eminent domain or otherwise, the City shall be thereupon reimbursed in the amount of the agreed present value of the City Hospital and appurtenant assets. No constitutional provision has been pointed out which this offends, and such is necessary for successful constitutional attack upon legislation which always carries with it the presumption of validity. Thus this question is answered in the negative.

The second question is a novel one and appears to be aimed in the wrong direction. Constitutional provisions such as ours (Const. 1895, art. I, Sec. 17) are for the benefit and protection of owners whose property is taken for public purposes. 18 Am. Jur. 634, Eminent Domain, Sec. 6. The city owns the present hospital and has agreed that its value for the purpose of any future taking is $1,500,000.00. Agreement of the State and county to this figure is evidenced by the Act. None says to the contrary.

Eminent domain is a part of sovereignty and the general rule is that the power cannot be aliened or altered by contract. 29 C. J. S. Eminent Domain, § 4. But the Act does not purport to do that. On the contrary, its terms anticipate the possibility of future exercise of the power. That the value be fixed now in this unusual case violates no rule of law which has been advanced. Practically, the present properties, building and all, will doubtless become so mingled with after-acquired property and equipment as to defy identification and valuation in the future. The city will lose possession and control under the plan.

Because of the dependency of the third question upon the answers to the others it will be presently passed and the fourth will now be considered. Appellant's argument relating to the latter mainly concerns itself with the possi-

bility that the Board may perpetuate itself in office by rec-
ommending the reappointment of each member as his term
expires. Sec. 11 of art. I of the Constitution is cited; it
provides in part that no person shall be elected or appointed
to office in this State for life or during good behavior, ex-
cept notaries and officers in the militia.

The Act names the initial members of the Board, pro-
vides for staggering expirations of their terms and with
reference to appointment of successors with six-year terms
says in Sec. 4, 45 Stat. 1150, as follows: "All vacancies
shall be filled in the following manner: If the vacancy in
office shall be for a 'City Member', the remaining members
of the Board, or a majority thereof, shall submit a nom-
ination or nominations to the City Council of the City of
Greenville for its approval; if the vacancy in office shall
be for a 'County Member', the remaining members of the
Board, or a majority thereof, shall submit a nomination
or nominations to the Greenville County Delegation to the
General Assembly for its approval; and, if the vacancy in
office shall be for the 'Member at Large', the remaining
members of the Board, or a majority thereof, shall submit
a nomination or nominations to the City Council of the
City of Greenville and the Greenville County Delegation
to the General Assembly for their approval. Upon the ap-
proval of a majority of the City Council of the City of
Greenville, or a majority of the Greenville County Delega-
tion to the General Assembly, as the case may be, or by
both in the event the nomination be for the 'Member at
Large', then the Clerk of the City Council, or the Secretary
or Acting Secretary of the County Delegation, or both,
as the case may be, shall certify their approval to the Gov-
ernor of South Carolina, who shall commission the nom-
inee for the term provided by the provisions of this Sec-
tion. All members of the Board shall serve without com-
pensation. Appointments and acceptances thereof shall be

duly filed in the office of the Clerk of Court for Greenville County."

It is seen that this is not a delegation to unofficial persons of the power of appointment of public officers as was involved in *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88. Rather it is controlled by *State ex rel. Coleman v. Lewis,* 181 S. C. 10, 186 S. E. 625, where appointment of district highway commissioners to the State Highway Commission by the members of the General Assembly from the counties which compose the respective districts was upheld.

The focal point of attack by appellant, that the board may recommend for reappointment their members as their respective terms expire and do this indefinitely, thereby circumventing the cited section of the constitution, is not directly involved in this action for such a situation has, of course, not arisen; but it may be considered in order to determine the legality of the scheme. We are constrained to hold that the supposed attempt by the members of the Board to perpetuate themselves in office would run counter to the spirit, at least, of the constitution, with the result of invalidity of the attempt..

In the absence of constitutional or statutory provision it is, as said in 42 Am. Jur. 955, Public Officers, Sec. 97, "contrary to public policy to permit an officer having an appointing power to use such power as a means of conferring an office upon himself, or to permit an appointing body to appoint one of its own members." The situation supposed in this instance is so close to the facts of the cases reviewed in the Annotation in 31 L. N. S. 575 that the condemnatory rule should be the same. There is no reason for sound distinction between the power to recommend for appointment and the power of appointment itself. See also, *Parrish v. Town of Adel,* 144 Ga. 242, 86 S. E. 1095. The result, therefore, is that each mem-

ber of the Board, as his term expires, shall be ineligible for appointment to an immediately succeeding term. In view of this, the objection to the plan of appointment falls to the ground.

That the constitutional bonded debt limit of Greenville County will be exceeded by the terms of the Act (question 5) is contended only upon the ground that it is obligated to the city in the amount of $1,500,000.00 should it ever acquire the hospital. This, however, is a purely contingent liability which need not be taken into consideration in determining the validity of bonds about to be issued. *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421.

Question three is based upon the premise that the proposed contract should be held to be ineffective to accomplish its purpose for one or more of the reasons assigned in the other questions. Disposition of them has destroyed the premise. Thus this third question need not be discussed.

The legislation under review presents an interesting and apparently equitable partnership between city and county to provide a needed public facility. It is in this respect like that involved in *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631, 639, where the county of Charleston furnished a site for the erection by the State of a hospital which will be operated in connection with the State Medical College and promises great advantages to both participants. In that case the court found an implied contract of permanence while here the obligation to the city is express. The following is from the opinion in that case: "In other words, there is a clearly implied obligation on the part of the State to operate the hospital as planned and to continue so to do, or else to make just compensation to the county. We cannot assume that such an obligation would be disregarded in any respect."

Judgment Affirmed.

BAKER, C.J., and FISHBURNE and OXNER, JJ., concur. TAYLOR, J., did not participate.