**COMMONWEALTH of Kentucky ex rel. Frederic J. COWAN, Attorney General of the Commonwealth of Kentucky, Movant,**

v.

**Wallace G. WILKINSON, Governor of the Commonwealth of Kentucky, Member of the University of Kentucky Board of Trustees, and Individually, Respondent.**

No. 91–SC–988–I.

Supreme Court of Kentucky.

Feb. 13, 1992.

Publication Ordered March 6, 1992.

Chris Gorman, Atty. Gen., Robert Bullock, Thomas J. Hellmann, Ross T. Carter, Asst. Attys. Gen., Frankfort, for movant.

Charles S. Cassis, Stephen R. Schmidt, John David Dyche, Brown, Todd and Heyburn, Louisville, for respondent.

WINTERSHEIMER, Justice.

This matter was before the Court on December 9, 1991, pursuant to a CR 65.09 motion which seeks to vacate or modify an order issued by the Court of Appeals which dissolved a temporary injunction granted by the Franklin Circuit Court. The Franklin Circuit Court temporary injunction prohibited Wallace G. Wilkinson, then Governor of the Commonwealth of Kentucky, from being sworn in and acting as a member of the Board of Trustees of the University of Kentucky pursuant to an executive order he issued on December 2, 1991, appointing himself to such position in order to fill a vacancy and pursuant to a commission issued by him and the Secretary of State. The Attorney General contends that the original injunctive relief was proper and that the order of the Court of Appeals was in error.

The precise posture of this case is a review pursuant to CR 65.09 of the order of dissolution issued by the Court of Appeals. CR 65.09 provides in part that a

review of such an order is discretionary with this Court and that such a motion will be entertained only for extraordinary cause shown in the motion. The order of this Court issued December 9, 1991, was not a decision on the merits in this matter, but merely affirmed the order of the Court of Appeals dissolving the temporary injunction.

The salient issues to be decided by this Court are 1) whether extraordinary cause exists for overturning the Court of Appeals decision, and 2) whether the circuit court abused its discretion in granting a temporary injunction.

On December 2, then Governor Wilkinson appointed himself to the Board of Trustees of the University of Kentucky to fill the vacancy created by the death of member-at-large Albert B. Chandler. K.R.S. 164.130(1) provides that the Governor shall make all appointments to the Board of Trustees and provides some minimal qualifications for members-at-large. The Governor appointed himself by virtue of an executive order to a term ending June 30, 1997. The Attorney General sued to enjoin the Governor from being sworn in and acting as a Trustee because he contends that such self-appointment is contrary to public policy. Wilkinson argued that without immediate relief from the Court of Appeals, the Office of Governor would be irreparably harmed because the circuit court invaded his executive authority to appoint members to fill vacancies on the U.K. Board of Trustees. Wilkinson also argued that the circuit court order violates the separation of powers by imposing judicial policy making on the executive and legislative branches of government and thereby violates the constitutional system of government.

■ The appellate review of the decision by the Court of Appeals and the underlying decision of the Franklin Circuit Court is tempered by the recognition that a temporary injunction is an extraordinary remedy and the sufficiency of the evidence presented to the circuit court must be evaluated in the light of both substantive and equitable principles. The propriety of a temporary injunction is basically addressed to the sound discretion of the circuit court. Unless the circuit court has abused its discretion, a reviewing court has no authority to set aside a temporary injunction.

■ The purpose of statutory requirements for the issuance of temporary injunctions is to ensure that injunctions are issued only where absolutely necessary to preserve a party's rights pending a trial on the merits. Although a temporary injunction is not to be substituted for a full trial on the merits, the party seeking the injunction must clearly demonstrate either by verified complaint, affidavit or other proof that harm is likely to occur unless the injunction issues. CR 65.04. In order to demonstrate a right to a temporary injunction, the movant must first allege possible abrogation of a concrete personal right. Some substantial claim to a personal right must be alleged in order for a movant to be entitled to a temporary injunction. CR 65.-04. A doubtful case should await a trial on the merits because the temporary injunction often has the effect of enforcing a mere claim of right. It is also necessary that a clear showing be made that rights of the movant will be immediately impaired. A remote possibility of some feared wrong in the future is not sufficient to support an award of a temporary injunction. The party seeking the injunction must demonstrate an urgent necessity for the relief requested. CR 65.04.

■ In determining the propriety of a temporary injunction it is important to determine whether the public interest will be harmed by the issuance of an injunction or whether its effect would be to maintain the status quo. The mere allegation of irreparable injury is insufficient to justify a temporary injunction.

■ The sufficiency of a verified complaint to support a temporary injunction should be evaluated by balancing the hardships test which provides that if the complaint shows probability of irreparable injury and equities are in favor of issuance, it is sufficient if the complaint raises serious questions warranting a trial on the merits.

If a party requesting temporary injunction has shown the probability of irreparable injury, presented a substantial question as to the merits and the equities are in favor of issuance, then a temporary injunction should be granted.

■ Applying those standards to this situation, it would appear that the motion of the Attorney General did not meet the requirements of the extraordinary remedy for injunctive relief as established by Civil Rule 65.03; 65.04 and *Maupin v. Stansbury*, Ky.App., 575 S.W.2d 695 (1978). The Attorney General has not demonstrated or made a clear showing by affidavit or verified complaint that his rights are being or will be violated so as to cause immediate and irreparable injury.

*Maupin, supra,* indicates that a party must first allege possible abrogation of a concrete personal right. Here the Attorney General has no personal right of any kind. A doubtful case should await a trial on the merits. This is clearly a very doubtful case as to the standing of the Attorney General.

The remote possibility of some feared wrong in the future is insufficient to support an award of a temporary injunction. It is necessary to show that there is a probable harm which would occur prior to trial. Here there is no clear showing of just exactly what harm will result from Wilkinson's service as one of the sixteen trustees until a trial on the merits. We are not convinced that there was any proof of any real harm to be associated with Wilkinson's participation in a vote as one of sixteen members of a Board of Trustees which would cause irreparable harm. The apprehension or fear of possible harm is not sufficient.

■ The assertion by the Attorney General that any action taken by Wilkinson as a Trustee will be irreversible is not supported by any evidence. To support an extraordinary remedy of injunction, there must be shown a practically certain injury. *Cf. Oscar Ewing, Inc. v. Melton,* Ky., 309 S.W.2d 760 (1958); *Hager v. New South Brewing Co.,* Ky., 90 S.W. 608 (1906). The single affidavit presented by the Attorney General is not sufficient to justify such a conclusion.

Certainly the Trustees can reconsider any action. The denial of the requested injunctive relief does not render a possible final judgment in favor of the movant meaningless as is required under *Maupin.* The removal of Wilkinson as a Trustee can occur at any time within his term as Trustee which does not end until 1997. The arguments presented to the circuit court are mere speculation. The Attorney General has failed to allege and prove facts which clearly show immediate and irreparable harm. Therefore injunctive relief was not warranted.

Our next consideration is a review of the maintenance of the status quo. Actually it would appear that the temporary injunction would change the status quo because Wilkinson is now a member of the Board of Trustees and injunctive relief would prevent him from acting in any capacity as a member and therefore disturb the status quo.

Section 76 of the Kentucky Constitution provides that the Governor shall have power to fill vacancies by granting commissions. In this case the commission was issued on December 2, 1991 and therefore Wilkinson was a Trustee at that time. K.R.S. 164.130 permits the Governor to appoint trustees to fill vacancies. It is important to recognize that K.R.S. 164.150 specifically provides that Trustees of the University of Kentucky are *not* public officers except for certain limited purposes in connection with the state procurement code. Therefore, there would be no incompatibility between an elected constitutional office and service as a Trustee.

There is no particular significance to the taking of an oath at a board meeting or elsewhere. There is no statute that indicates there is a necessary prerequisite of an oath in connection with the discharge of duties as a trustee. Section 228 of the Kentucky Constitution requires an oath for *officers* before they enter their duties. The trustees are not public officers. Consequently, it would appear that Wilkinson

was a Trustee as of December 2, and that the injunction to prevent him from acting really alters the status quo rather than preserving the status quo. Considering the equities of the situation, we do not find a basis to justify the granting of the extraordinary remedy of a temporary injunction at this time.

 The Attorney General has argued that the action by Wilkinson is contrary to common law public policy. Clearly the establishment of public policy is not within the authority of the courts. Section 27 of the Kentucky Constitution provides that the powers of government be divided into three distinct units: Executive, Legislative and Judicial. The establishment of public policy is granted to the legislature alone. It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest. It is the prerogative of the legislature to declare that acts constitute a violation of public policy. *Owens v. Clemons*, Ky., 408 S.W.2d 642 (1966). *Cf. Freas v. First Federal Savings and Loan Assn. of Bowling Green*, Ky.App., 636 S.W.2d 660 (1982).

 K.R.S. 164.130 as enacted by the legislature permits the Governor to make appointments to the Board of Trustees. There is no limitation in that statute which prohibits the Governor from being a Board member or from appointing himself. Accordingly, the courts cannot write such a limitation into the statute on the grounds of public policy. Where there is no exception to the positive terms of a statute the presumption is that it intended none and it is not within the authority of a court to introduce an exception by construction or interpretation. *Manning v. Kentucky Board of Dentistry*, Ky.App., 657 S.W.2d 584 (1983).

In this instance, the legislature made no exception to the qualified persons whom the Governor could appoint to the at large seats on the Board of Trustees. It would seem apparent that the General Assembly did not intend any such exception to be applicable to the Governor because the leg-islature has enacted other statutes to prohibit certain office holders from holding a second office. K.R.S. 61.080 through 61.-090. In this situation it has decided not to make the office of Governor statutorily incompatible with membership on the Board of Trustees.

 There is no express or implied restriction on the Governor from appointing himself to the Board of Trustees in either the statutes or the Constitution. The courts cannot legitimately usurp the province of the executive by applying some theory of common law public policy. Judicially created common law must always yield to the superior policy of legislative enactment and the Constitution. *Cf., General Electric Co. v. American Buyers Cooperative*, Ky., 316 S.W.2d 354 (1958).

It should be observed that the framers of the Kentucky Constitution did include several provisions prohibiting certain office-holders from filling other state positions by labeling them incompatible as in constitutional sections 44, 160, 165 and 237. No such constitutional prohibition applies to the qualifications of Wilkinson, or any other Governor to sit on the Board of Trustees.

The legislature enacted statutes establishing the Board of Trustees and dealt with the authority of the Governor to appoint members to the Board who meet certain general qualifications. There is no legislative prohibition to the Governor appointing himself. No political party imbalance was created by this appointment. Therefore the legislature in effect established a public policy which does not include any implied prohibition of self-appointment. This Court cannot legislate by judicial fiat.

A careful examination of the statute does not disclose any incompatibility with the office of Governor and membership on the Board of Trustees. In fact, until 1972, the Governor and several other public officers were automatically members of the Board by virtue of their office. In 1972 when the legislature enlarged the Board of Trustees it created several at-large posi-

tions which gave the Governor unlimited authority and discretion to fill such positions by appointment. The only qualification was that the appointments be balanced between the two major political parties of the state.

Although the Attorney General argues that there is some vague diminution of public confidence in government, the real harm would be to establish a kind of government by judicial activism, rather than have the courts interpret and apply the constitutional and statutory laws to a given situation. There is no indication that Wilkinson has violated a clear provision of either the statutes or the constitution and the courts should not intrude on the domain of either the legislature or the executive. To do so is an abuse of discretion and we believe that the Franklin Circuit Court has committed such an abuse.

It should be clearly understood that the mere acknowledgement of the authority of a governor to appoint himself as a Trustee does not imply that any governor has the power to appoint himself or herself to any position which is a public office. The argument by the Attorney General in this respect is of no consequence. The boards and commissions about which the Attorney General expresses concern are actual public offices and are not otherwise exempt from such a designation by statute or constitutional provision.

The service involved in this case is a noncompensable position. The oral argument of the Attorney General demonstrated the vagueness of any public power connected with it. The Attorney General noted that there was prestige and the opportunity to "rub elbows" with people of great notoriety in Kentucky. These are hardly qualifications for public office or any office.

The citations utilized by the Attorney General are not convincing. The three Kentucky cases noted with the intention to support the view that officials may not appoint themselves relate to appointments made by lesser authorities with powers that are limited by either the Constitution or the statutes. That is not the case here.

The cases also deal with appointments to employment positions for which the appointee would receive compensation. Here the appointment involves noncompensable service. None of the authorities cited by the Attorney General relate to appointments to a position which is established and regulated by a rather comprehensive statute such as in this case. The statutes clearly send a message that the General Assembly could have easily prohibited self-appointment but did not do so. There is certainly nothing to prohibit the legislature from amending the statute if it believes that is appropriate.

The fear expressed by the Attorney General over a wholesale self-appointment system is unreal. The Governor cannot simultaneously hold any public office declared incompatible by either the statutes or the Constitution. The Governor cannot simultaneously hold any other elected office. The Governor cannot simultaneously hold any public office or employment, for which compensation would cause his total compensation to exceed the constitutional maximum. And of course the Governor cannot hold any office or position for which he does not meet the qualifications as required by the statutes or constitution.

Here the issuance of a temporary injunction by the circuit court was an abuse of discretion. The Attorney General did not support the burden necessary for the issuance of the extraordinary relief of a temporary injunction. There is considerable doubt as to whether the Attorney General can ultimately prevail on the merits of this case.

The circuit court's injunction imposes on the exercise of the appointment power of the executive and is a judicially invented policy limitation which is not based on either the statutes or constitution. It is an abuse of discretion to infringe the powers specifically delegated to the executive or legislative branch of government under the constitution.

There has been no demonstration of any irreparable harm which will arise in the absence of the issuance of a temporary injunction.

 If in fact Wilkinson does not have the right to sit as a member of the U.K. Board of Trustees, the legal proceeding pursuant to Civil Rule 81 heretofore available by Quo Warranto is a sufficient remedy. Injunction will not lie to restrain disqualified officers of a town from exercising the duties of their office because there is an adequate remedy at law by Quo Warranto. *Hill v. Anderson,* 122 Ky. 87, 90 S.W. 1071 (1906). In the absence of extraordinary circumstances, an officer should not be enjoined from the performance of the business of the public pending the outcome of an ouster proceeding. The mere fact that a contract is about to expire and new contracts may or will be made is not such an extraordinary circumstance. *Cf. Commonwealth ex rel Breckinridge v. Winstead,* Ky., 430 S.W.2d 647 (1968).

It is the opinion of this Court that the circuit court abused its discretion in granting a temporary injunction, and there is no extraordinary cause to disturb the decision of the Court of Appeals. The decision of the Court of Appeals dissolving the temporary injunction is affirmed and the order of this Court issued December 9, 1991 is reiterated.

COMBS, LAMBERT, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., did not sit.

LEIBSON, J., dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

"... I, Wallace G. Wilkinson, Governor of the Commonwealth of Kentucky, hereby appoint myself, Wallace G. Wilkinson, 2723 Martinique Lane, Lexington, Kentucky 40505, as a member of the University of Kentucky Board of Trustees ..., for a term expiring June 30, 1997." Executive Order 91–1215, Dec. 2, 1991.

We are confronted with a question of great public importance and constitutional magnitude, involving the foundations of power: is the power to appoint oneself inherent in the power of a public official to appoint, or must such power first be expressed or reasonably inferable from constitutional or statutory mandate?

Otherwise stated: is it a usurpation of governmental authority for a governmental official with the power of appointment, executive, legislative or judicial, to appoint himself to the position where nothing in the constitution nor any statute specifies that he has any such power of appointment?

The Majority Opinion has approached this subject matter by inferring such power to appoint exists simply because nothing in the constitution or any statute prohibits it. I suggest that the opposite is true: that power to appoint exists only where the constitution and statutes enacted pursuant to the constitution specify such power exists or such can be reasonably inferred from their language.

The Attorney General has presented substantial legal authority questioning the power of the Governor to appoint himself to the University of Kentucky Board of Trustees, including:

1) Three Kentucky cases wherein similar appointments by lesser appointing authorities have been held *ultra vires*: *Meglemery v. Weissinger,* 140 Ky. 353, 131 S.W. 40 (1910); *Lemon v. Fiscal Court of Casey County,* Ky., 291 S.W.2d 572 (1956); and *Smith v. McDermott,* 313 Ky. 184, 230 S.W.2d 636 (1950).

2) Citations to the general rule as related in legal treatises in point: 63A Am.Jur.2d, *Public Officers and Employees,* Sec. 100; and 67 C.J.S., *Officers,* Sec. 23 ("It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office.").

3) Citations to cases from five of our sister states wherein similar appointments were considered unlawful: *Felker v. City of Monroe,* 22 Ga.App. 301, 95 S.E. 1023 (1918); *State ex rel. Smith v. Bowman,* 184 Mo.App. 549, 170 S.W. 700 (1914); *State v. McDaniel,* 157 A.2d 463 (Del.1960); *Bradley v. City Council of City of Greenville,* 212 S.C. 389, 46 S.E.2d 291 (1948); and *State v. Thompson,* 193 Tenn. 395, 246 S.W.2d 59 (1952). As stated in the last

case cited, *State v. Thompson*, 246 S.W.2d at 62:

> " 'The common conscience of mankind revolts at the idea' [of self-appointment and] 'the public is entitled to have it strictly enforced against every public official'. . . . "

State constitutions cannot, and do not, define every term they use to constitute and empower state government. The terms used are largely dependent on the common understanding of the "common conscience of mankind" (*State v. Thompson, supra* ). There is at the least a strong argument justifying the trial court's temporary injunction supporting the premise that there is no authority granted by the constitution to any public official, executive, legislative, or judicial, to appoint himself simply because there is a statute creating a position silent on whether his authority extends to appointing himself. In the words of Mr. Bumble in *Oliver Twist*, "If the law supposes that, ... 'the law is an ass.' "

The Governor's decision to appoint himself to public office is unprecedented, and in my opinion the trial court exercised sound judgment in enjoining this appointment until the legitimacy of such act could be fully considered. The Majority Opinion states it is the responsibility of the trial court to maintain the *status quo* until this question can be decided. I agree. But the Majority's analysis of what constitutes the *status quo* is seriously flawed. To my knowledge no Governor has ever presumed to appoint himself to the University of Kentucky Board of Trustees, or to any position remotely similar, until Wallace G. Wilkinson, in his position as Governor, undertook to appoint Wallace G. Wilkinson, in his position as a citizen of Kentucky, as a member of the Board. The question here is not whether one person can wear two hats, or indeed, can occupy two · different offices which do not seem to be necessarily incompatible. The question is much different, and much more important, than whether the duties of one office are incompatible with the duties of the other. The question is whether the grant of power to appoint in the constitution contemplates that a public official will arrogate unto himself another office to be enjoyed either during his term of office or after he leaves office, in circumstances where the statutory authority creating the position and directing the method by which it shall be filled does not specify that he can serve in the position, or that he may designate himself to occupy the position.

The province of a preliminary injunction is to preserve *pendente lite* the last actual non-contested status preceding controversy, and prevent irreparable loss caused by a change in this status. The trial court decided that the *status quo* here is the situation that existed at the time when Governor Wilkinson undertook to appoint Citizen Wilkinson a member of the Board of Trustees, and not the situation as it was changed by making the appointment. I agree. Further, I agree with the trial court that there is, at the least, sufficient doubt about the inherent power of the Governor to appoint himself to a position such as this, in the absence of specific statutory authority, to meet the requirement for the issue of a temporary injunction to maintain the *status quo* until this important public question can be fully considered and properly decided.

The question before the trial court was one of balancing the equities, between the relatively slight damage to Citizen Wilkinson from denying him this position of power, prestige, and perquisites until the legal issues can be determined, and the potential public injury resulting from creating, before the issue can be finally decided, a precedent for self-appointment to desirable offices. Where the issue is the power of self-appointment, whether the position is desirable for the money it pays, or because it presents an opportunity to make money, or simply because of the power, prestige and perquisites that go with the position, generates no apparent reason for making a distinction.

It is fair to take judicial notice that Governor Wilkinson's appointment of Citizen Wilkinson to the University of Kentucky Board of Trustees has already disrupted the political process. Governor Wilkinson's

successor deemed it necessary to devote a substantial portion of his "State of the Commonwealth" address to the General Assembly in January, 1992, to the subject of total replacement of the Board of Trustees at all state universities and complete revision of the appointment method, and legislation to address the subject has already been introduced and presently under consideration by the General Assembly. In these circumstances it is difficult to understand that my brethren found the trial court abused its discretion in believing there was no public interest to protect in enjoining this appointment to the Board until its constitutionality and statutory legality could be finally determined. Already, our decision here, publicly announced on December 9, 1991, affirming the decision of the Court of Appeals to vacate the trial court's temporary injunction in this case, has caused irreparable damage in terms of waste of public resources to deal with it, all at public expense, far outweighing any injury to Citizen Wilkinson which would have been generated by a contrary result.

The Majority has acknowledged that the responsibility of the Court of Appeals in reviewing the decision of the trial court to grant the temporary injunction was *not* to interfere with the trial court's decision unless it was an abuse of discretion. Merely because we are now authorized by CR 65.09 to "entertain" review of a Court of Appeals' decision on a CR 65.07 motion, does not change the inherent nature of this review. When CR 65.09 speaks to "extraordinary cause," just as when CR 65.07 speaks to the Court of Appeals' authority to review, we are not free to exercise our independent judgment with regard to whether the trial court should have granted a temporary injunction; we are to change the result only when the trial court has abused its discretion. Certainly, this is not the case in present circumstances.

This is a declaratory judgment authorized by the Declaratory Judgment Act, KRS 418.040, *et seq.* A host of cases hold that the rights and duties of state, as well as county and municipal officers, may be determined in a declaratory judgment action. *See* Ky.Digest, Anno., Vol. 15, p. 372. KRS 418.045 specifies that "[a]ny person ... whose rights are affected by statute, municipal ordinance or other government regulation," which surely includes Executive Order 91–1215, may bring such an action. The Majority Opinion has wandered far afield in comments suggesting that the temporary injunction was inappropriate because "the Attorney General has no personal right of any kind" to vindicate. It is the Attorney General's responsibility to file suit to vindicate public rights, as attorney for the people of the State of Kentucky. The rights of the people, as the body politic, are identical to the personal rights of a private individual, and enjoy at least the same, if not more, standing to seek a declaratory judgment, and to seek injunctive protection against injury. Under KRS 415.050, the Attorney General may proceed directly against a usurper. Under KRS 15.020, the Attorney General is the state's chief law officer and may "exercise all common law duties and authority pertaining to the office of the Attorney General under the common law." It is the personal right of the people as the body politic and not any personal right of the person holding the office of Attorney General that is being represented here. It is unreasonable to suggest that because the person with the official responsibility to seek protection on the people's behalf has no personal stake in the outcome, there is no right of redress and no right to injunctive relief against the Governor's usurpation of power, if such has occurred.

Nor should we be impressed because there is a statute, KRS 164.150, specifying that a person shall not "be held to be a public officer by reason of his membership on the Board." A member of the University of Kentucky Board of Trustees is a public officer in the sense that he is appointed by the Governor to the governing body of a public corporation to exercise power for the benefit of the public. KRS 164.160 specifies that the "board of trustees shall be a body corporate, under the name of board of trustees of the University of Kentucky, with the usual corporate pow-

ers...." On repeated occasion we have held the University of Kentucky is a state agency, an arm of state government, and surely the persons appointed to its governing board occupy a public office in any common understanding of the term. The General Assembly cannot deprive a public official of his status as such simply by declaring something is a fact when it is not a fact. In addressing a similar problem in *Fannin v. Williams*, Ky., 655 S.W.2d 480, 484 (1983), we stated: "We cannot sell the people of Kentucky a mule and call it a horse, even if we believe the public needs a mule."

The Kentucky cases cited by the Attorney General *supra*, denying the power of self-appointment to county and local officials in situations similar to present circumstances, specify that it is inconsistent with the powers of the office for the appointing authorities to appoint themselves to positions on governing boards. The Majority Opinion discards these cases on grounds that they involve "appointments made by lesser authorities with powers that are limited by either the Constitution or the statutes." Neither the constitution nor the statutes had any express limitation on the appointing authorities in the three Kentucky cases cited by the Attorney General, and I question whether there is sound reason to apply a different principle here.

There is more than enough here to justify the trial court's decision to issue a temporary injunction. Neither the Court of Appeals nor this Court should have set it aside.